558 So.2d 481 (1990)
Gary GOULD, Appellant,
v.
STATE of Florida, Appellee.
No. 87-03068.
District Court of Appeal of Florida, Second District.
March 14, 1990.
*482 James Marion Moorman, Public Defender, Bartow, and Andrea Steffen, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Stephen A. Baker, Asst. Atty. Gen., Tampa, for appellee.
PATTERSON, Judge.
Gary Gould appeals from his convictions and sentences for kidnapping,[1] sexual battery while threatening to use a deadly weapon,[2] two counts of sexual battery while threatening to use force or violence likely to cause serious personal injury to the victim,[3] two counts of sexual battery on a victim physically helpless to resist,[4] and three counts of battery.[5] Appellant contends: (1) the victim was not physically helpless, (2) it was error to allow Williams[6] rule evidence, and (3) the court erred in failing to grant a judgment of acquittal on the kidnapping charge. We affirm in part, reverse in part and remand with directions.
Tracy was the victim of appellant's brutal attack, and she testified to the following at trial. Tracy and her son resided with appellant, and on the evening of October 26, 1986, appellant went out to get beer and returned with two six-packs. A short time later, appellant came into the bedroom yelling and proceeded to tape Tracy's hands and feet with duct tape. He slapped her five or six times and stated that he hated her and was going to cut her hair off, which he proceeded to do. He then made Tracy hop into the bathroom where he began shaving her head. Next, appellant removed the duct tape and tied Tracy with bedsheets to fixtures in the bathroom.
Appellant tore off her underwear and hit her again. With respect to the details of the first three sexual batteries, suffice it to say that appellant's vile actions and use of foreign objects for vaginal and anal penetration manifest appellant's severe sexual perversity and depravity. Tracy resisted these activities, told appellant to stop and tried to talk to him. At one point Tracy told appellant that her hands hurt, and he loosened the bindings. She screamed several times and asked appellant to "please stop." Tracy stated that she stopped screaming because she did not want to awaken her child. In addition to the sexual batteries, appellant blindfolded Tracy and beat her with a spatula until it broke, and he struck Tracy in the face with what she believed was a hammer. She told him that she did not want to die and asked him to stop.
After appellant untied Tracy, he held a knife to her throat and told her to perform oral sex on him. He then took her into the *483 bedroom and again forced her to perform oral sex on him after he bound her hands behind her back. Appellant then fell asleep on the bed. Tracy testified that she was afraid of appellant and did not resist him more because she feared for her safety and that of her son.
After appellant fell asleep, Tracy got up, took her child to a neighbor's house and went to the police station. Officer Rickus interviewed Tracy. He then went to appellant's apartment and awakened appellant. He believed that appellant had been drinking, but that he was not intoxicated. After hearing his Miranda rights, appellant stated that he had gotten into a fight with Tracy, that he had pulled her into the bathroom and pushed her against the shower. Appellant stated that he understood that he had committed a serious crime. Tracy testified that the attack on her was unprovoked and that appellant had been drinking, but he was not intoxicated.
The following testimony was offered as Williams rule evidence over appellant's objections. Appellant's former girlfriend, Karen, testified that some eleven months previously, in November of 1985, she and her child were living with appellant. On November 21st she came home and could tell that he had been drinking, but that he was not intoxicated. She and appellant had been fighting during the day, and she had hung up on him earlier. Appellant wanted to talk, and she refused. Karen went into the bedroom, and appellant dragged her into the living room, pushed her into a chair and began yelling at her. He then returned her to the bedroom where he handcuffed her and tied her legs with strips of cloth. Appellant got a pocket knife, a sword and a hatchet, and at one point threatened to kill her if she made noise. Appellant cut off a piece of her hair with a knife and threatened to cut her legs off. Appellant then untied Karen, and they sat and talked. Appellant then ate and went to bed. Karen got her child and went to the police. Karen stated that she had allowed appellant to restrain her previously as part of their sexual relationship. On the evening of November 21st, she was not sexually assaulted.
Officer Rickus testified that he recognized appellant from the incident with Karen. Officer Rickus had interviewed Karen, and he testified as to her appearance. He went to appellant's apartment and arrested him. Officer Farrell interviewed appellant after his arrest on November 21, 1985. Appellant stated that he and Karen had argued and that he had tied her. He also slapped her and may have threatened her. Photographs, restraints and weapons relating to the November 21st incident were admitted into evidence over appellant's objection.
The trial court denied appellant's motions for judgment of acquittal on each count. The jury found appellant guilty as charged on all counts, and the trial court sentenced appellant within the guidelines to twenty-seven years' incarceration.
Appellant's first contention, which involves his convictions under counts two and three for sexual battery on a victim physically helpless, is meritorious. It is even more clear than it was in Davis v. State, 538 So.2d 515 (Fla. 2d DCA), rev. denied, 544 So.2d 201 (Fla. 1989), that the victim in this case did not meet the statutory definition of "physically helpless." See § 794.011(1)(e), Fla. Stat. (1985). Tracy was bound, but the evidence shows that she repeatedly communicated her unwillingness to the sexual batteries. Therefore, the convictions under counts two and three must be reversed.
The defense requested a jury instruction on the category two lesser included offense of sexual battery under section 794.011(5), Florida Statutes (1985), to which the state objected. The trial judge denied appellant's request for that instruction. Appellant argues that the case must be remanded for the entry of a conviction for simple battery on counts two and three because the evidence supported a conviction for battery, and the jury was instructed on that charge.
Section 924.34, Florida Statutes (1987), provides:
When the appellate court determines that the evidence does not prove the offense *484 for which the defendant was found guilty but does establish his guilt of a lesser statutory degree of the offense or a lesser offense necessarily included in the offense charged, the appellate court shall reverse the judgment and direct the trial court to enter judgment for the lesser degree of the offense or for the lesser included offense.
(emphasis supplied). Section 794.011 is entitled "Sexual Battery." Subsection (1)(h) defines sexual battery as "oral, anal or vaginal penetration by, or union with, the sexual organ of another or the anal or the vaginal penetration of another by any other object." In subsections (2) through (5) the basic definition of sexual battery must be proved in each case. Then, depending upon the facts comprising the sexual battery, the crime can be a life felony, a first degree felony, or a second degree felony. Section 794.011(5) provides that "[a] person who commits sexual battery upon a person 12 years of age or older, without that person's consent, and in the process thereof uses physical force and violence not likely to cause serious personal injury is guilty of a felony of the second degree."
Appellant agrees that the evidence supported a simple battery conviction. The same evidence is sufficient to show physical force and violence not likely to cause serious personal injury under section 794.011(5). Section 924.34 provides that when the appellate court determines that the evidence establishes a lesser statutory degree of the same offense, the appellate court shall reverse and direct the trial court to enter a judgment for that lesser degree of the offense. The sexual battery charged in count two consisted of appellant forcing the victim to perform oral sex on him in the bedroom while her hands were bound behind her back. The sexual battery charged in count three involved the appellant inserting foreign objects into the victim's vagina and rectum while her limbs were bound to bathroom fixtures. In both incidents it is clear that any physical force that appellant may have used in the commission of these acts was not likely to cause serious personal injury.
Thus, it would appear that subsection (5) sexual battery is a "lesser statutory degree of the offense" as set forth in section 924.34. We would be inclined to so hold were it not for the decision of our supreme court in Brown v. State, 206 So.2d 377 (Fla. 1968). The question presented in Brown was whether the defendant was entitled to a jury instruction of larceny in a robbery case. The court addressed section 919.14, Florida Statutes (1965), which reads:
Determination of degree of offense. If the indictment or information charges an offense which is divided into degrees, without specifying the degree, the jurors may find the defendant guilty of any degree of the offense charged; if the indictment or information charges a particular degree the jurors may find the defendant guilty of the degree charged or of any lesser degree. The court shall in all such cases charge the jury as to the degrees of the offense.
In its analysis the court stated that "[s]ection 919.14 applies only to those crimes which are divided into degrees, e.g., unlawful homicide (Fla. Stat. §§ 782.04, 782.06, F.S.A.), and, arson (Fla. Stat. §§ 806.01-806.04, F.S.A.)." Brown, 206 So.2d at 381. It seems logical to extend the definition to crimes such as burglary (section 810.02, Florida Statutes) and sexual battery, which are divided by degree of felony and which the legislature could just as easily denominate as "first degree," "second degree," and "third degree," as are homicide and arson. We feel bound, however, to apply the definition contained in Brown and hold that subsection (5) sexual battery is not a lesser statutory degree of subsection (4)(a) sexual battery for the purposes of section 924.34.
We therefore turn our attention to whether subsection (5) sexual battery is a "lesser offense necessarily included in the offense charged." Appellant argues that it is not because it is a category two lesser offense in the Florida Standard Jury Instructions in Criminal Cases, while simple battery is the only category one lesser offense. We disagree. In Gallo v. State, *485 491 So.2d 541 (Fla. 1986), the defendant was charged with a variety of offenses including sexual battery. The opinion does not state the precise sexual battery charge, but it is clear that the charge was not under subsection (5). The defendant requested that the trial court instruct the jury on no lesser included offenses. The state objected and requested instructions as to all applicable lessers. The court, complying with the state's request, instructed on a series of lesser included offenses including subsection (5) sexual battery. As in this case, subsection (5) sexual battery was a category two lesser of the crime charged. In affirming the defendant's conviction of subsection (5) sexual battery, our supreme court said: "This Court has long held that upon a proper request, a trial judge must instruct the jury on necessarily included lesser offenses." (emphasis provided). Gallo, 491 So.2d at 543. A category two lesser offense, therefore, can constitute a "necessarily included lesser offense," and we so hold that subsection (5) sexual battery is such an offense in this case.
Appellant argues that section 924.34 should not be applied in this case because he requested a jury instruction on this lesser offense, the state objected and the trial court denied the requested instruction. He contends that the state should now be estopped from obtaining relief from this court because it objected to the instruction in the trial court. See Bean v. State, 469 So.2d 768 (Fla. 5th DCA 1984). He also argues that he should not be convicted of a crime that the jury did not have the opportunity to consider and that he had no opportunity to defend against in the trial court. Although this argument has some logical appeal, we are compelled to reject it. Section 924.34 does not relate to the positions the parties assumed at trial or the instructions read to the jury. If the jury had been instructed on subsection (5) sexual battery and had nevertheless found appellant guilty as charged, he would stand in the identical posture before this court as he does now. Section 924.34 permits the appellate court to look directly to the evidence and make its own independent evaluation of that evidence. Having done so, we hold that the evidence establishes appellant's guilt, beyond a reasonable doubt, of sexual battery under section 794.011(5) as to counts two and three of the information.
Next, appellant contends that it was reversible error for the trial court to allow the Williams rule evidence. The evidence regarding the previous incident involving Karen was relevant to the issue of intent for the kidnapping count. Kidnapping requires proof of specific intent, and appellant sought to use voluntary intoxication as a defense. The fact that appellant displayed extremely similar behavior in binding Karen, forcing her into another room to batter her and threatening her life with a sword is relevant to show that when appellant eleven months later kidnapped Tracy by forcing her into the bathroom to threaten her life, beat her and also commit sexual batteries, he had the specific intent to do so. An analogous situation arose in Rossi v. State, 416 So.2d 1166 (Fla. 4th DCA 1982), where the defendant's defense to kidnapping, sexual battery and attempted second degree murder was insanity. The court held that evidence of a similar prior crime was admissible to prove intent and negate the insanity defense.
As appellant contends, identity is not an issue in this case. Similar fact evidence relevant to prove a material fact other than identity need not meet the rigid similarity requirement applied when collateral crimes are used to prove identity. See Calloway v. State, 520 So.2d 665, 668 (Fla. 1st DCA 1988), rev. denied, 529 So.2d 693 (Fla. 1988). Although a sexual battery did not occur in the incident, the two attacks did share unique points of similarity. Appellant argues that binding a victim's hands is commonplace. In both cases here, however, appellant forced his live-in girlfriend into another room, bound her, threatened her life, cut off her hair and hit her, all while a child was asleep in the home. Appellant then calmly went to sleep after each attack.
The state argues, based on Jones v. State, 398 So.2d 987 (Fla. 4th DCA), rev. denied, 408 So.2d 1094 (Fla. 1981), that the *486 evidence was admissible to show a "general pattern of criminality." The cases which allow similar fact evidence to show a pattern of criminality appear to involve child sexual battery cases. With respect to the pattern of criminality reasoning, this court has stated:
Yet, some argue that permitting the state to submit similar fact testimony to show a "pattern of criminality" amounts to nothing more than allowing proof of bad character and propensity. They argue that one's "pattern of criminality" is not a legitimate issue upon which the state is entitled to submit relevant evidence to prove.
Hodge v. State, 419 So.2d 346, 347 (Fla. 2d DCA 1982), rev. denied, 426 So.2d 26 (Fla. 1983). The Hodge court affirmed the admission of the similar fact evidence, but supported its decision with the additional fact that the evidence was relevant to lack of consent. Thus, the better view is to affirm the Williams evidence as relevant to the issue of intent for the kidnapping, rather than, as the state asserts, to prove a pattern of criminality.
Finally, appellant asserts that the trial court should have granted a judgment of acquittal on the kidnapping charge. Appellant was convicted of kidnapping with the intent to commit or facilitate the commission of a felony. § 787.01, Fla. Stat. (1985). To support a conviction for kidnapping, the movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crimes;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially less in risk of detection.
Ferguson v. State, 533 So.2d 763, 764 (Fla. 1988) (citations omitted). Appellant's movement and confinement of Tracy to the bathroom from the bedroom was not inconsequential and was not inherent in the sexual batteries. The evidence also indicated that binding her limbs to bathroom fixtures made it substantially easier for appellant to commit sexual batteries involving foreign objects without physical opposition from the victim. The sexual battery that he committed in the bedroom was forcing Tracy to perform oral sex on him. Although he could have performed the other sexual batteries in the bedroom, the jury could reasonably conclude that the movement to the bathroom made those crimes much easier to commit, and thus the kidnapping conviction must stand.
Based on the foregoing, the convictions under counts two and three are reversed with directions to enter convictions for sexual battery under section 794.011(5), Florida Statutes (1985). § 924.34, Fla. Stat. (1987). The convictions on all other counts are affirmed and the case remanded for resentencing.
Affirmed in part, reversed in part, and remanded.
CAMPBELL, C.J., and RYDER, J., concur.
NOTES
[1] § 787.01, Fla. Stat. (1985).
[2] § 794.011(3), Fla. Stat. (1985).
[3] § 794.011(4)(b), Fla. Stat. (1985).
[4] § 794.011(4)(a), Fla. Stat. (1985).
[5] § 784.03, Fla. Stat. (1985).
[6] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).